**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERGII BRATUSOV, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> COMSCORE, INC., BRYAN WIENER, and GREGORY A. FINK, <br><br> Defendants. | Case No. 1:19-cv-03210-KPF |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

VINSON & ELKINS LLP
Clifford Thau
Marisa Antos-Fallon
David Hoffman
666 Fifth Avenue, 26th Floor
New York, New York 10103
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
Email: cthau@velaw.com
Email: mantosfallon@velaw.com
Email: dhoffman@velaw.com

*Attorneys for Comscore, Inc., Bryan Wiener, and*
*Gregory A. Fink*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ...................................................................................................................2

    I.    The Relevant Parties. ...............................................................................................3

    II.   The Alleged Misstatements.......................................................................................3

    III.  The Alleged Loss Causation. ...................................................................................5

LEGAL STANDARDS ..........................................................................................................6

ARGUMENT.........................................................................................................................7

    I.    The Complaint Pleads No Material Misstatements or Omissions. .................................7

        A.    Comscore Had No Duty to Disclose an Internal Business Disagreement. ..............8

            1.    Disagreements Over Corporate Strategy Need Not Be Disclosed..................8

            2.    The Complaint Does Not Explain Why the Alleged Omission Would Render Comscore's Disclosures False or Misleading. ...................................9

        B.    The Alleged Misstatements Are Non-Actionable...................................................11

            1.    The First Two Alleged Misstatements Are Puffery and/or Opinions. ..........11

            2.    The Alleged Misstatements Are Protected by the PSLRA's Safe Harbor. .................................................................................................14

                a.    Comscore's Public Statements Were Accompanied by "Meaningful Cautionary Language," Rendering the Alleged Misstatements Immaterial....................................................................14

                b.    The Complaint Fails to Plead Actual Knowledge that the Alleged Misstatements Were False or Misleading. ...........................16

    II.   The Complaint Fails to Plead a Strong Inference of Scienter.......................................17

        A.    The Complaint Alleges No Motive and Opportunity to Commit Fraud................18

        B.    The Complaint Does Not Allege Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness. .............................................................19

    III.  The Complaint Does Not Plead Loss Causation...........................................................20

    IV.  The Complaint Fails to Plead Control-Person Liability. ..............................................23

CONCLUSION.....................................................................................................................24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*60223 Trust v. Goldman Sachs & Co.*,
540 F. Supp. 2d 449 (S.D.N.Y. 2007) ..................................................................... 23

*Altayyar v. Etsy, Inc.*,
731 F. App'x 35 (2d Cir. 2018) ............................................................................... 12

*Anschutz Corp. v. Merrill Lynch & Co.*,
690 F.3d 98 (2d Cir. 2012) ............................................................................... 1, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ................................................................................ 2, 18

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019) ...................................................................... 1

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .................................................................................................. 8

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014) ................................................................................... 21

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014) .............................................................................. 12, 19

*City of Warwick Mun. Employees Pension Fund v. Rackspace Hosting, Inc.*,
No. 17 Civ. 3501, 2019 WL 452051 (S.D.N.Y. Feb. 5, 2019) ............................... 12

*Dekalb Cty. Pension Fund v. Transocean Ltd.*,
817 F.3d 393 (2d Cir. 2016) ................................................................................... 24

*ECA, Local 1.34 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) .......................................................................... 2, 18, 19

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013) ............................................................................... 2, 23

*Fogel v. Wal-Mart de Mexico SAB de CV*,
No. 13 Civ. 2282, 2017 WL 751155 (S.D.N.Y. Feb. 27, 2017) ............................. 20

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
336 F. Supp. 3d 196 (S.D.N.Y. 2018) .................................................................... 17

*Friedman v. Endo Int'l PLC*,
No. 16 Civ. 3912, 2018 WL 446189 (S.D.N.Y. Jan. 16, 2018) .............................. 13

*Gagnon v. Alkermes PLC*,
368 F. Supp. 3d 750 (S.D.N.Y. 2019) ........................................................ 8, 17, 19

*George Lehmann & Insured Benefit Plans, Inc. v. Ohr Pharmaceutical Inc.*,
No. 18 Civ. 1284, 2019 WL 4572765 (S.D.N.Y. Sept. 20, 2019) ........................................... 18

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016) ................................................................. 19

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) .................................................................................... 6

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*,
No. 18 Civ. 00299, 2019 WL 4601644 (S.D.N.Y. Sept. 23, 2019) ........................................ 21

*Hill v. Gozani*,
638 F.3d 40 (1st Cir. 2011) ............................................................................. 9

*IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland
Grp., PLC*,
783 F.3d 383 (2d Cir. 2015) .......................................................................... 12

*In re Aceto Corp. Sec. Litig.*,
No. 18 Civ. 2425, 2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019) ........................................... 20

*In re Aratana Therapeutics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018) ................................................................. 13

*In re Barrick Gold Corp. Sec. Litig.*,
341 F. Supp. 3d 358 (S.D.N.Y. 2018) ................................................................. 21

*In re BHP Billiton Ltd. Sec. Litig.*,
276 F. Supp. 3d 65 (S.D.N.Y. 2017) .................................................................. 15

*In re Deutsche Bank AG Sec. Litig.*,
No. 09 Civ. 1714, 2016 WL 4083429 (S.D.N.Y. July 25, 2016) ............................................ 9

*In re Kandi Techs. Grp., Inc. Sec. Litig.*,
No. 17 Civ. 1944, 2019 WL 4918649 (S.D.N.Y. Oct. 4, 2019) ............................................. 6

*In re Marsh & Mclennan Companies, Inc. Sec. Litig.*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006) ................................................................. 20

*In re Merrill Lynch & Co., Inc.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003) ................................................................. 23

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010) ........................................................................... 9

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010) ...................................................................... 21, 22

*In re Rockwell Med., Inc. Sec. Litig.*,
No. 16 Civ. 1691, 2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ............................................ 8

*In re Sequans Commc'ns S.A. Sec. Litig.*,
No. 17 Civ. 4665, 2019 WL 4805072 (E.D.N.Y. Sept. 30, 2019) .......................................... 21

*In re Tempur Sealy Int'l, Inc. Sec. Litig.*,
No. 17 Civ. 2169, 2019 WL 1368787 (S.D.N.Y. Mar. 26, 2019) .......................................... 10

iii

*In re Xunlei Ltd. Sec. Litig*., No.
  18 Civ. 467, 2019 WL 4276607 (S.D.N.Y. Sept. 10, 2019)...................................................... 22

*Kleinman v. Elan Corp*., *plc*,
  706 F.3d 145 (2d Cir. 2013) ......................................................................................................... 8

*Kolbasyuk v. Capital Mgmt. Servs., LP*,
  918 F.3d 236 (2d Cir. 2019) ......................................................................................................... 7

Lentell v. Merrill Lynch & Co.,
  396 F.3d 161 (2d Cir. 2005) ....................................................................................................... 21

*Levitt v. J.P. Morgan Sec., Inc.*,
  710 F.3d 454 (2d Cir. 2013) ......................................................................................................... 8

*Nguyen v. New Link Genetics Corp.*,
  No. 16 Civ. 3545, 2019 WL 591556 (S.D.N.Y. Feb. 13, 2019) ............................................... 21

*Novak  v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ....................................................................................................... 20

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
  367 F. Supp. 3d 16 (S.D.N.Y. 2019) ......................................................................................... 19

*Oklahoma Firefighters Pension & Ret. Sys. v. Student Loan Corp.*,
  951 F. Supp. 2d 479 (S.D.N.Y. 2013) ....................................................................................... 23

*Ong v. Chipotle Mexican Grill, Inc.*,
  294 F. Supp. 3d 199 (S.D.N.Y. 2018) ................................................................................. 14, 16

*Pacific Inv. Mgmt. Co. LLC v. Mayer Brown LLP*,
  603 F.3d 144 (2d Cir. 2010) ....................................................................................................... 24

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
  153 F. Supp. 3d 628 (S.D.N.Y. 2015) ....................................................................................... 12

*Plumbers & Steamfitters Local 137 Pension Fund v. Am. Express Co.*,
  No. 15 Civ. 5999, 2017 WL 4403314 (S.D.N.Y. Sept. 30, 2017)............................................... 9

*Robertson v. MetLife Sec., Inc.*,
  779 F. App'x 783 (2d Cir. 2019) ................................................................................................. 6

*Russo v. Bruce*,
  777 F. Supp. 2d 505 (S.D.N.Y. 2011) ....................................................................................... 20

*Sachsenberg v. IRSA Inversiones y Representaciones Sociedad Anonima*,
  339 F. Supp. 3d 169 (S.D.N.Y. 2018) ......................................................................................... 3

*Schaffer v. Horizon Pharma PLC*,
  No. 16 Civ. 1763, 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018)................................................. 13

*Schiro v. Cemex, S.A.B. de C.V.*,
  396 F. Supp. 3d 283 (S.D.N.Y. 2019) ....................................................................................... 20

*Shemian v. Research In Motion Ltd.*,
  No. 11 Civ. 4068, 2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013) ............................................. 12

*Singh v. Cigna Corp.*,
  918 F.3d 57 (2d Cir. 2019) ........................................................................................................... 8

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
No. 17 Civ. 8457, 2019 WL 4094559 (S.D.N.Y. Aug. 29, 2019) ........................................... 10

*Slayton v. Am. Exp. Co.*,
604 F.3d 758 (2d Cir. 2010) ....................................................................................... 14, 15, 16

*Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*,
No. 17 Civ. 8107, 2019 WL 4640217 (S.D.N.Y. Sept. 23, 2019) ........................................... 13

*Steamfitters' Indus. Pension Fund v. Endo Int'l PLC*,
771 F. App'x 494 (2d Cir. 2019) ........................................................................................ 8

*Stratte-McClure v. Morgan Stanley*,
776 F.3d 94 (2d Cir. 2015) ........................................................................................... 1, 8

*Susie Ong v. Chipotle Mexican Grill, Inc.*,
No. 16 Civ. 141, 2017 WL 933108 (S.D.N.Y. Mar. 8, 2017) ................................................. 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)............................................................................................ 1, 3, 7, 17

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016) ......................................................................................... 3, 13

*Topping v. Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015) .................................................................................. 23

*United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*,
865 F.3d 71 (2d Cir. 2017) .............................................................................................. 7

*Wilbush v. Ambac Fin. Grp., Inc.*,
271 F. Supp. 3d 473 (S.D.N.Y. 2017) ................................................................................ 23

*Williams v. Affinion Grp., LLC*,
889 F.3d 116 (2d Cir. 2018) ............................................................................................. 7

*Wyche v. Advanced Drainage Sys., Inc.*,
No. 15 Civ. 5955, 2017 WL 971805 (S.D.N.Y. Mar. 10, 2017) ............................................ 19

*Zagami v. Cellceutix Corp.*,
No. 15 Civ. 7194, 2016 WL 3199531 (S.D.N.Y. June 8, 2016).............................................. 24

**Statutes**

15 U.S.C. § 78j(b) ...................................................................................................... 6

15 U.S.C. § 78u-4 ....................................................................................................... 1

15 U.S.C. § 78u-4(b)(1) ................................................................................................ 7

15 U.S.C. § 78u-4(b)(2) ................................................................................................ 2

15 U.S.C. § 78u-4(b)(2)(A)............................................................................................. 7

15 U.S.C. § 78u-4(b)(3) ................................................................................................ 7

**Rules**

17 C.F.R § 240.10b–5(b) ............................................................................................... 9

Fed. R. Civ. P. 10(c) ......................................................................................................... 3

Fed. R. Civ. P. 12(b)(6)....................................................................................................... 7

Fed. R. Civ. P. 9(b) ............................................................................................................. 7

**Other Authorities**

Wolters Kluwer, Fed. Sec. L. Rep., P 35991515 (1998) ................................................... 22

Defendants Comscore, Inc. ("Comscore"), Bryan Wiener, and Gregory Fink (collectively, "Defendants") submit this memorandum of law in support of their motion to dismiss the Amended Complaint (the "Complaint"), *see* Dkt. 27, filed by Lead Plaintiff Sergii Bratusov ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff's Complaint should be dismissed because it is the type of "abusive litigation" that the "exacting pleading requirements" of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 *et seq*. (the "PSLRA"), are designed to "check," *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 308 (2007). Plaintiff's core contention is that Comscore failed to disclose an alleged internal business disagreement between its executives and board regarding implementation of cost-control measures. Plaintiff further alleges this purported omission rendered the executives' forward-looking statements—concerning the success of Comscore's cross-platform measurement strategy, as well as Comscore's financial projections—false or misleading. *See* Compl. ¶ 2. The Complaint's securities fraud allegations fail to state a claim for at least three reasons.

*First*, the Complaint fails to allege any material misstatement or omission. Issuers have no duty to disclose internal business deliberations, such as the alleged internal disagreement over cost-control measures that is the subject of Plaintiff's Complaint. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 105 (2d Cir. 2015). Moreover, the Complaint's conclusory allegations do not provide any explanation why any failure to disclose this internal disagreement made Plaintiff's forward-looking statements false or misleading, nor is any such explanation apparent. *See Anschutz Corp. v. Merrill Lynch & Co*., 690 F.3d 98, 108 (2d Cir. 2012). Furthermore, the statements Plaintiff identifies as purportedly false or misleading are not sufficiently material to be actionable, either because they are puffery, opinions, or forward-looking statements protected by the PSLRA's safe harbor. *See Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 250 (S.D.N.Y. 2019) (citations omitted).

*Second*, the Complaint fails to allege facts giving rise to *any* inference of scienter—let alone the "strong inference" of scienter required to state a securities fraud claim.  15 U.S.C. § 78u-4(b)(2).  The Complaint does not even attempt to allege that any Defendant benefitted personally from the purported fraud, and does not allege a single fact supporting an inference that the Defendants knew (or should have known) contradictory information when they made the alleged misstatements.  *See ECA, Local 1.34 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 199 (2d Cir. 2009).

*Third*, the Complaint's loss causation allegations are implausible.  Plaintiff attempts to link the disclosure of Comscore's purported internal strategy disagreement on March 31, 2019, to losses occurring through *August 2019*.  Although Plaintiff contends that a "corrective disclosure" occurred in May 2019, the cited disclosure does not contain any reference to the alleged internal strategy disagreement.  In any case, this gap of at least several months negates any inference of the proximate nexus required to plead loss causation.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 106 (2d Cir. 2007).  Furthermore, the excerpts from Comscore's public filings cited in Plaintiff's own Complaint demonstrate that his losses were caused principally by Comscore's failure to meet analyst revenue targets—not by any alleged fraud.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

## BACKGROUND

The following facts are taken from the Complaint, documents incorporated by reference therein, documents publicly-filed with the Securities & Exchange Commission ("SEC"), and other

2

publicly-available documents referenced in the Complaint. *See Tellabs,* 551 U.S. at 322; *accord Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016).[1]

## I.    The Relevant Parties.

Plaintiff purports to represent a shareholder class that purchased Comscore stock between February 28, 2019, and August 7, 2019 (the "Class Period"). *See* Compl. ¶ 1. Comscore is an analytics company that combines information about content advertising, consumption, and demographics across digital platforms, television, and movies. *Id.* at ¶ 15. Defendant Bryan Wiener was Comscore's Chief Executive Officer for a portion of the Class Period; he resigned on March 31, 2019. *Id.* at ¶ 48. Sarah Hofstetter was Comscore's President during a portion of the Class Period, and also resigned on March 31, 2019. *Id.* Collectively, Mr. Weiner and Ms. Hofstetter are referred to herein as the "Departing Executives." Gregory A. Fink was Comscore's Chief Financial Officer during the Class Period and remains in that position. *Id.* at ¶ 14.

## II.    The Alleged Misstatements.

The Complaint alleges that, during the Class Period, a disagreement existed between the Departing Executives and Comscore's board of directors (the "Board") "regarding the strategy and direction of the Company." *Id.* at ¶ 2. According to the Complaint, the Board advocated cost-control measures, while the Departing Executives believed that such measures would "compromise the Company's long-term goal to establish a cross-platform measurement currency." *Id*. at ¶¶ 2, 43-48. Establishing a currency for cross-platform measurement refers to Comscore's goal of "combin[ing] information about content and advertising consumption on digital platforms (smartphones, tablets and computers), television [] and movie screens with demographics,"

---

[1] Defendants assume the facts in the Complaint, and documents incorporated by reference therein, to be true for the purpose of this motion only and not for any other purpose. *See* Fed. R. Civ. P. 10(c); *accord Sachsenberg v. IRSA Inversiones y Representaciones Sociedad Anonima*, 339 F. Supp. 3d 169, 174 n.2 (S.D.N.Y. 2018) (citation omitted).

3

thereby "help[ing] companies across the media ecosystem better understand and monetize their audiences. . . ." Comscore, Inc., Annual Report, 1 (Form 10-K) (March 1, 2019), attached as Exhibit 1 to the Declaration of Clifford Thau in Support of Defendants' Motion to Dismiss ("Thau Decl."). According to the Complaint, the alleged disagreement regarding corporate strategy culminated in the Departing Executives' resignations. Compl. ¶¶ 44-48.

The Complaint alleges that Comscore's failure to disclose this disagreement regarding corporate strategy rendered the following statements false or misleading. *See generally id.* at ¶ 43 ("The statements that Defendants made in ¶¶ 35-37 were false and misleading.").

*First*, on February 28, 2019, Comscore issued a press release announcing fourth quarter and full-year 2018 results. Plaintiff excerpts the following text from this press release:

> "In the fourth quarter, we continued to expand our customer relationships, drive revenue growth, and improve our cost structure while investing in product development, resulting in our fourth straight quarter of positive adjusted EBITDA," said Bryan Wiener, chief executive officer of Comscore. "We continue to benefit from shifts in the media landscape that demand a better solution and currency for measuring media across platforms. 2018 was a meaningful step forward in the transformation of Comscore, and we are now leveraging a stronger foundation to execute into 2019 and beyond."

*Id.* at ¶ 35 (emphasis omitted) (the "First Alleged Misstatement"); *see* Comscore, Inc., Current Report, Exh. 99.1 (Form 8-K) (Feb. 28, 2019), attached as Thau Decl., Exhibit 2.

*Second*, Plaintiff cites the following statement from Mr. Weiner during the February 28, 2019, conference call following the release Comscore's fourth quarter and full-year 2018 results:

> The headline today is our strategy of becoming a trusted currency for planning, transacting and evaluating media cross-platforms is working. . . . While we are not declaring victory, we do believe today's report is yet another proof point that we're on the right track towards building a business that can deliver improved revenue growth with expanding margins over time. Revenue in Q4 exceed[ed] our expectations due to a strong selling quarter as well as excellent delivery on our solutions.

*Id.* at ¶ 36 (emphasis omitted) (the "Second Alleged Misstatement").[2]

---

[2] This statement is excerpted to include only portions emphasized in bold in the Complaint. *See* Compl. ¶ 36.

*Third*, Plaintiff cites a statement by Mr. Weiner during the same conference call that, "[f]or 2019, we anticipate mid-single digit revenue growth, a slight improvement in gross margins over 2018 and generally flat non-GAAP operating expenses relative to 2018.  We expect our adjusted EBITDA margin will expand in the second half of the year and come in at mid-single digits for the year."  *Id.* at ¶ 37 (the "Third Alleged Misstatement").  Plaintiff does not allege any other purported misstatements or omissions in the Complaint.

## III.     The Alleged Loss Causation.

With respect to loss causation, Plaintiff alleges the following timeline.  On March 31, 2019, Comscore announced the Departing Executives' resignations in a press release.  *Id*. at ¶ 48.  The press release also announced that Comscore "expected first quarter 2019 revenue to be between $100 million and $104 million, falling short of analysts' estimates of approximately $106 million in revenue."  *Id.*  On April 1, 2019, Comscore filed a Current Report stating that the Departing Executives resigned because, "although the Board and Mr. Wiener are generally aligned on the Company's strategy, Mr. Wiener disagreed with the Company regarding the execution of the strategy."  Comscore, Inc., Current Report, 4 (Form 8-K) (April 1, 2019), attached as Thau Decl., Exhibit 3; *see* Compl. ¶ 49.  Plaintiff identifies a 30% drop in Comscore's stock price on that date, closing at $14.24 per share.  Compl. ¶ 50.

The Complaint then cites to a May 8, 2019, press release on first quarter 2019 results, announcing a 3.4% year-over-year revenue decline.  *Id.* at ¶ 51.  This press release also announced an Adjusted EBITDA loss of $2.5 million, compared to positive $3.6 million for first quarter 2018, and a "strategic review" designed to decrease "annualized costs and cash outflow by approximately $20 million."  *Id.*  The same day, Comscore filed a Current Report, describing plans to terminate 10% of its workforce "to decrease its costs."  *Id.* at ¶ 52.  Plaintiff characterizes these May 8, 2019, statements as "partial corrective disclosures regarding the impact of Defendants' false and

misleading statements regarding the Company's growth and long-term goal to establish a cross-platform measurement currency," and cites to a decline in Comscore's stock price on May 9, 2019, to $11.34 per share. *Id.* at ¶ 54.

Finally, Plaintiff points to an August 6, 2019, press release providing results for the second quarter of 2019. *Id.* at ¶ 57. This press release announced a 4.4% year-over-year revenue decline, and an Adjusted EBITDA loss of $3.2 million, compared to positive $3.6 million for the second quarter of 2018. *Id.* The release also described cost reductions, stating that they would "ultimately allow us to generate break-even to positive operating cash flow later this year." *Id.* The Complaint alleges that, following this press release, analysts lowered their revenue and EBITDA forecasts for Comscore. *Id.* at ¶ 59. The next and final stock price movement cited by Plaintiff occurred on August 12, 2019, when Comscore's stock price fell to $1.61 per share. *Id.* at ¶ 60.

## LEGAL STANDARDS

Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), prohibits fraud "in connection with the purchase or sale of any security," *In re Kandi Techs. Grp., Inc. Sec. Litig.*, No. 17 Civ. 1944, 2019 WL 4918649, at *4 (S.D.N.Y. Oct. 4, 2019) (citations omitted). Claims under Section 10(b), and Rule 10b-5 promulgated thereunder, contain six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014); *accord Robertson v. MetLife Sec., Inc.*, 779 F. App'x 783, 785 (2d Cir. 2019) (summary order). To survive a motion to dismiss, the Complaint's Section 10(b) claim must satisfy three pleading standards.

6

*First*, under Fed. R. Civ. P. 12(b)(6), the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *accord Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019). A claim is plausible where it "plead[s] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). *Second*, under Fed. R. Civ. P. 9(b), the Complaint must "state with particularity the circumstances constituting fraud or mistake." The Complaint "must detail (1) the specific statements that are false or fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018) (citations omitted) (numbering added). *Third*, the Complaint must meet the PSLRA's "exacting requirements" by "stat[ing] with particularity both the facts constituting the alleged violation, and the facts evidencing scienter. . . ." *Tellabs*, 551 U.S. at 313. The Complaint must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1), (3). Likewise, the Complaint must "state with particularity facts giving rise to a ***strong inference*** that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A) (emphasis added); *see United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 88 n.14 (2d Cir. 2017).

## ARGUMENT

### I.     The Complaint Pleads No Material Misstatements or Omissions.

To plead a material misstatement or omission, a complaint must identify: (1) a false representation; (2) a literally true representation that is misleading to a reasonable investor; or (3) an omission of facts which the speaker had a duty to disclose. *See Kleinman v. Elan Corp*.,

7

*PLC,* 706 F.3d 145, 152-53 (2d Cir. 2013) (citations omitted); *accord Gagnon v. Alkermes PLC*, 368 F. Supp. 3d 750, 765 (S.D.N.Y. 2019) (citations omitted).  A misstatement or omission is material "if there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares"—*i.e.*, if it "significantly alter[s] the total mix of information." *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) (citations omitted).  For the reasons below, the Complaint fails to plead facts satisfying this element.

### A.      Comscore Had No Duty to Disclose an Internal Business Disagreement.

Plaintiff contends that Comscore's alleged omission—*i.e.*, non-disclosure of a strategic disagreement at Comscore—rendered the Alleged Misstatements false or misleading, *see* Compl. ¶¶ 35-43, but "[s]ilence, absent a duty to disclose, is not misleading," *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988).  Rather, "for an omission to be considered actionable under § 10(b), the defendant must be subject to an underlying duty to disclose." *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013); *accord In re Rockwell Med., Inc. Sec. Litig.*, No. 16 Civ. 1691, 2018 WL 1725553, at *6 (S.D.N.Y. Mar. 30, 2018).  The Complaint pleads no such duty.  Issuers have no duty to disclose internal business deliberations.  Moreover, Plaintiff has not even attempted to allege ***why*** the non-disclosure would have rendered the Alleged Misstatements false or misleading.

### 1.      Disagreements Over Corporate Strategy Need Not Be Disclosed.

Comscore had no obligation to disclose to investors an internal disagreement about cost-control measures.  The Second Circuit is "reluctan[t] to interpret the securities laws in a manner that requires companies to give competitors notice of proprietary strategies and information." *Stratte-McClure*, 776 F.3d at 105.  Accordingly, 10(b) does not "require a company to announce its internal business strategies." *Id.*; *see, e.g.*, *Steamfitters' Indus. Pension Fund v. Endo Int'l PLC*, 771 F. App'x 494, 498 (2d Cir. 2019) (summary order) ("[T]he Funds' allegations fall short

8

because the business strategy decision on which they rely is not the type of disclosure Item 303 requires. . . .") (citations omitted); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010) (holding disclosures about investment strategy "did not trigger a generalized duty requiring defendants to disclose the entire corpus of their knowledge" on strategy); *see also Hill v. Gozani*, 638 F.3d 40, 58 (1st Cir. 2011) ("[T]he existence of internal disagreement about strategy is not the kind of fact that must be disclosed to investors.").

The controlling case law on this point is logical and protects both issuers and shareholders. Were issuers required to disclose internal strategy disagreements, they would be forced to publicize innumerable strategic differences (as corporate decision-making is rarely monolithic) and therefore would be disincentivized from robust debate. Courts therefore dismiss Section 10(b) claims predicated on non-disclosure of internal deliberations. *See, e.g.*, *Plumbers & Steamfitters Local 137 Pension Fund v. Am. Express Co.*, No. 15 Civ. 5999, 2017 WL 4403314, at *18-19 (S.D.N.Y. Sept. 30, 2017) (dismissing a 10(b) claim because "companies are not required to announce [their] internal business strategies or to identify the particulars of [their] trading positions") (citations omitted); *see also In re Deutsche Bank AG Sec. Litig.*, No. 09 Civ. 1714, 2016 WL 4083429, at *19 (S.D.N.Y. July 25, 2016) (stating that "companies are not required to announce internal business strategies. . . ."). Accordingly, Comscore had no duty to disclose its internal disagreement regarding cost-control measures.

### 2. The Complaint Does Not Explain Why the Alleged Omission Would Render Comscore's Disclosures False or Misleading.

Plaintiff does not even attempt to plead facts to satisfy the PSLRA and Rule 9(b) requirement to explain with particularity "why the [allegedly misleading] statements were fraudulent"—*i.e.*, why disclosure of the internal strategy disagreement was "necessary in order to make the statements made . . . not misleading." 17 C.F.R § 240.10b–5(b); *see also Anschutz*, 690

9

F.3d at 108 (stating that a 10(b) claim must—at minimum—"explain why the statements were fraudulent"). Moreover, it is not apparent how the existence of an internal disagreement regarding cost-control measures would render any of the Alleged Misstatements false or misleading.

The totality of the Complaint's discussion of the purported reasons why the Alleged Misstatements are misleading is contained in a single conclusory paragraph:

> Contrary to Defendants' representations that the Company was focused on "driv[ing] revenue growth," that Comscore's "strategy of becoming a trusted currency for planning, transacting and evaluating media cross-platforms" was "working," and that the Company was "on the right track towards building a business that can deliver improved revenue growth with expanding margins over time," there was a fundamental disagreement that existed at the time between Comscore's executives and the Company's Board regarding the strategy and direction of the Company . . . Accordingly, at the time Defendants made their statements and issued guidance for the Company, they knew such statements lacked a reasonable basis because of this fundamental disagreement, and that such statements were thereby false and misleading.

*Id.* at ¶ 43 (internal alterations omitted). This cursory paragraph is legally insufficient to meet the standards of the PSLRA and Rule 9(b). *See, e.g.*, *Sjunde AP-Fonden v. Gen. Elec. Co.*, No. 17 Civ. 8457, 2019 WL 4094559, at *16 (S.D.N.Y. Aug. 29, 2019) (dismissing where the complaint failed to "provide[] a basis for why the revenue projections, without further disclosures, were misleading to a reasonable investor"); *In re Tempur Sealy Int'l, Inc. Sec. Litig.*, No. 17 Civ. 2169, 2019 WL 1368787, at *13 (S.D.N.Y. Mar. 26, 2019) ("Plaintiffs' allegations that the press release and conference remarks were materially false and misleading therefore are unsupported, conclusory, and insufficient to survive this motion.").

The facts alleged in the Complaint do not even *suggest* (let alone plead with particularity) that the non-disclosure of an internal strategic disagreement regarding cost-control measures made the Alleged Misstatements false or misleading. Nowhere does the Complaint allege any reason why this disagreement would mean that Comscore was *not* focused on "driving revenue growth," that Comscore's cross-platform strategy was *not* "working," or that Comscore was *not* on the

"right track" towards delivering improved "revenue growth with expanding margins over time." Compl. ¶¶ 35-37. Rather, the Complaint suggests that the Departing Executives and the Board had different strategies to achieve these goals.

To the extent Plaintiff is attempting to allege that Comscore failed to disclose some plan to abandon a strategy of developing a cross-platform measurement currency, any such allegation is contradicted by Plaintiff's own Complaint, and documents incorporated by reference therein, which demonstrate that this strategy is at the core of Comscore's business, and this remains the case following the alleged "corrective disclosures." According to the Complaint, Comscore stated on April 4, 2019, that:

> We do not expect these [officer resignation] changes to impact the work that we're doing for our clients or our strategy to be the trusted currency for planning, transacting, and evaluating media across platforms. We continue to be uniquely positioned to become the modern currency for the cross-platform era, and the changes we've made today are directly in line with that vision.

Compl. ¶ 44. Comscore's public filings at the end of the class period confirm that this strategy remained in place. *See, e.g.*, Comscore, Inc., Quarterly Report, 32 (Form 10-Q) (August 7, 2019), attached as Thau Decl., Exhibit 4 (stating that Comscore "measures consumer audiences and advertising across media platforms" and its "combination of data and methods helps companies across the media ecosystem better understand and monetize audiences . . . .").

### B.    The Alleged Misstatements Are Non-Actionable.

Plaintiff's Complaint should be dismissed for the additional reason that none of the Alleged Misstatements are actionable, either because they are statements of puffery or opinion, or because they are subject to the PSLRA's safe harbor for forward-looking statements.

### 1.    The First Two Alleged Misstatements Are Puffery and/or Opinions.

Statements of puffery—*i.e.*, "[s]tatements of general corporate optimism"—cannot form the basis of a Section 10(b) claim, unless "they are worded as guarantees or are supported by

11

specific statements of fact, or if the speaker does not genuinely or reasonably believe them." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 392 (2d Cir. 2015).   This is because, "[t]o be 'material' within the meaning of § 10(b), the alleged misstatement must be sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014).   The first two Alleged Misstatements are non-actionable because they "consist of vague aspirational statements" and therefore constitute puffery under the securities laws. *Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 37–38 (2d Cir. 2018) (summary order).

The First Alleged Misstatement—discussing Comscore's strong foundation for the future—is a vague expression of corporate optimism and therefore puffery: "We continue to benefit from shifts in the media landscape that demand a better solution and currency for measuring media across platforms.   2018 was a meaningful step forward in the transformation of Comscore, and we are now leveraging a stronger foundation to execute into 2019 and beyond."   Compl. ¶ 35. Numerous decisions from this District have held that similar statements are puffery.   *See, e.g.*, *City of Warwick Mun. Employees Pension Fund v. Rackspace Hosting, Inc.*, No. 17 Civ. 3501, 2019 WL 452051, at *5 (S.D.N.Y. Feb. 5, 2019) (holding that the statement "[w]e have ***strong*** alignment around our strategy" was puffery) (emphasis added); *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 648 (S.D.N.Y. 2015) (holding a statement that the company would "***transform***[] into a company with a larger product mix" to be puffery) (alterations omitted) (emphasis added); *Shemian v. Research In Motion Ltd.*, No. 11 Civ. 4068, 2013 WL 1285779, at *23 (S.D.N.Y. Mar. 29, 2013) (holding that the statement "[w]e are laying a ***strong foundation*** for RIM's expanding market opportunity" was puffery) (emphasis added).

12

The Second Alleged Misstatement—another vague optimistic statement about Comscore being "on the right track"—is also puffery: "[W]e do believe today's report is yet another proof point that we're on the right track towards building a business that can deliver improved revenue growth with expanding margins over time."  Compl. ¶ 36.  Again, courts in this District have repeatedly held that substantially similar statements are puffery.  *See, e.g.*, *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 757 (S.D.N.Y. 2018) (holding that statements about being "*on track*" were puffery) (emphasis added); *Schaffer v. Horizon Pharma PLC*, No. 16 Civ. 1763, 2018 WL 481883, at *9 (S.D.N.Y. Jan. 18, 2018) (holding that a statement that the company was "*on track*" was a "textbook case[] of corporate puffery") (emphasis added).

The Second Alleged Misstatement, prefaced by "we do believe," is non-actionable for the additional reason that it is an opinion.  A statement of opinion is actionable only if the speaker: (1) does not believe the statement; (2) supplies untrue facts to support the opinion; or (3) "makes the statement misleading to a reasonable investor" by omitting facts.  *Tongue*, 816 F.3d at 209 (citations omitted).  For the reasons discussed in Section I.A., *supra*, and I.B.2.b, *infra*, none of these circumstances applies here.  *See, e.g.*, *Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*, No. 17 Civ. 8107, 2019 WL 4640217, at *5 (S.D.N.Y. Sept. 23, 2019) (holding that the statement "[w]e believe we are well positioned to maintain this growth" was non-actionable); *Friedman v. Endo Int'l PLC*, No. 16 Civ. 3912, 2018 WL 446189, at *5 (S.D.N.Y. Jan. 16, 2018) (holding that the statement "we believe our objective to complete two to three value-creating deals in 2015 is achievable" was non-actionable).  Simply put, Comscore's statements about being "on track" and its strategy "working" are too amorphous to guarantee any objective fact or outcome to investors.

13

### 2.    The Alleged Misstatements Are Protected by the PSLRA's Safe Harbor.

All three Alleged Misstatements are not actionable for the additional reason that they are protected under the PSLRA's safe harbor for forward-looking statements. A forward-looking statement is protected by the PSLRA's safe harbor, if it: "(1) is identified and accompanied by meaningful cautionary language *or* (2) is immaterial *or* (3) the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading." *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766–67 (2d Cir. 2010) (citation omitted) (numbering added) (emphasis in original); *accord Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 237 (S.D.N.Y. 2018) (Failla, J.).

A plain reading of each of the Alleged Misstatements shows that they are forward-looking. *See, e.g.*, Compl. ¶ 35 ("[W]e are now leveraging a stronger foundation to execute *into 2019 and beyond*.") (emphasis added); *id.* at ¶ 36 ("[W]e're on the right track towards building a business that can deliver improved revenue growth with expanding margins *over time.*") (emphasis added); *see also Ong*, 294 F. Supp. 3d at 237 ("[P]rojections of expected sales [] are clearly forward-looking."). The Alleged Misstatements are therefore non-actionable if "accompanied by meaningful cautionary language" or Plaintiff does not plead "actual knowledge" that they were false or misleading. *Slayton*, 604 F.3d at 766.

### a.    Comscore's Public Statements Were Accompanied by "Meaningful Cautionary Language," Rendering the Alleged Misstatements Immaterial.

Comscore provided "meaningful cautionary language" alongside the Alleged Misstatements. For the February 28, 2019 conference call, Comscore provided an accompanying PowerPoint. *See* Thau Decl. Exh. 2 at Exh. 99.2. The first slide—entitled: "Cautionary Note"—states:

> This presentation contains forward-looking statements within the meaning of the Private Securities Litigation Reform Act . . . Forward-looking statements are those which are not

14

historical facts and include, without limitation, comments about our expectations, forecasts, plans and opinions, including with respect to financial and operation performance . . . Our actual results in future periods may differ materially from those currently expected because of a number of risks and uncertainties.  These risks and uncertainties include those described in our most recent 10-K and 10-Q filings. . . .

*Id.*  The February 28, 2019, press release contains an identical disclosure.  *Id.* at Exh. 99.1.

The Risk Factors disclosed in Comscore's prior annual report, *see* Comscore, Inc., Annual Report 10-25 (Form 10-K) (March 23, 2018), attached as Thau Decl., Exhibit 5, and incorporated by reference into the February 28, 2019, conference call presentation and press release, render the Alleged Misstatements immaterial as a matter of law, because they "conveyed substantive information" about the ***very risks*** the Complaint alleges materialized, *Slayton*, 604 F.3d at 772; *see generally In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 84 (S.D.N.Y. 2017) (holding that where a presentation incorporates "risk factors" disclosed elsewhere by reference, that is sufficient for the presentation to be "accompanied by" that "cautionary language").  The Complaint's core allegation is that Comscore failed to disclose an internal strategy dispute regarding cost-control measures, which rendered statements about future growth and revenues, and the success of its cross-platform strategy, false or misleading.  But Comscore disclosed the risks associated with its future growth and revenues, and the success of its corporate strategies.  For example:

- We rely on our management team, many of whom are recent hires and may need additional personnel to operate and grow our business.  The loss of one or more key employees, the inability to attract and retain qualified personnel, or ***the failure to integrate new personnel could harm our business*** . . . ***We may experience a loss of productivity due to the departure of key personnel*** and the associated loss of institutional knowledge, or while new personnel integrate into our business and transition into their respective roles.  ***This transition may not ultimately be successful***.

- ***We may encounter difficulties managing our costs, which could adversely affect our results of operations*** . . .  From time to time, as a result of acquisition integration initiatives, or through efforts to streamline our operations, we may and have reduced our workforce or reassigned personnel . . . If we are not able to efficiently and effectively manage our cost structure or are unable to find appropriate space to support our needs, our business may be impaired.

- Our revenues and results of operations may fluctuate in the future. *As a result, we may fail to meet or exceed the expectations of securities analysts or investors, which could cause our stock price to decline*.

- We have a history of significant net losses, *may incur significant net losses in the future and may not achieve profitability*. We incurred net losses of $281.4 million, $117.2 million, and $78.2 million for the years ended 2017, 2016 and 2015, respectively. We cannot make assurances that we will be able to achieve profitability in the future.

Thau Decl. Exh. 5 at 12-18 (emphasis added). Accordingly, Comscore cautioned investors of the very risks that Plaintiff alleges materialized, including the "failure to integrate new personnel," the "departure of key personnel," "difficulties managing costs," and "fluctuat[ing]" revenues. These cautionary statements render the Alleged Misstatements immaterial as a matter of law.

> **b.** **The Complaint Fails to Plead Actual Knowledge that the Alleged Misstatements Were False or Misleading.**

The Complaint asserts in conclusory fashion that "when Defendants made their statements and issued guidance for the Company, they knew such statements lacked a reasonable basis because of th[e] fundamental disagreement that existed at the time between Comscore's executives and the Company's Board regarding the strategy and direction of the Company." Compl. ¶ 43. This conclusory allegation does not satisfy the requirement that Plaintiff allege "*actual knowledge*" as required in order to lift the PSLRA safe harbor protection for forward-looking statements. The standard to plead "actual knowledge," in the context of forward-looking statements, is even higher than the typical PSLRA scienter requirements. *See Ong*, 294 F. Supp. 3d at 237; *see also Slayton*, 604 F.3d at 773 ("[T]he scienter requirement for forward-looking statements is stricter than for statements of current fact."). The Complaint does not allege a single fact demonstrating that Defendants had actual knowledge of contradictory information. As discussed above, Plaintiff does not allege any reason why the existence of a disagreement on strategy would render any of the Alleged Misstatements false or misleading, let alone that Defendants had knowledge of such facts. *See, e.g. Gagnon*, 368 F. Supp. 3d at 774 (stating that

16

"Second Circuit cases uniformly" require allegations of "*specific* contradictory information" that was available "*at the same time*" as the misleading statements or omissions) (citations omitted, emphasis in original).    Accordingly, the Complaint pleads no "actual knowledge" and the PSLRA's safe harbor applies.

## II.    The Complaint Fails to Plead a Strong Inference of Scienter.

Plaintiff's Complaint should be dismissed for the additional independent reason that it does not come close to alleging facts giving rise to a strong inference of scienter, as required by the PSLRA. "Scienter is defined as 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 216 (S.D.N.Y. 2018) (quoting *Tellabs*, 551 U.S. at 319).    Under "the stricter demand [that] Congress sought to convey" in the PSLRA, "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.    Accordingly, a 10(b) claim survives only "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing [*i.e.*, innocent] inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.    The Complaint falls far short of this standard.

A strong inference of scienter can be pleaded in two ways: "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) [facts] constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99 (citations omitted) (numbering in original).    The Complaint's allegations regarding scienter are contained entirely in the single paragraph in the "Scienter Allegations" section.  Compl. ¶ 77.[3]  It states:

---

[3] In an attempt to create an illusion of malfeasance, the first quarter of the Complaint is devoted to "Background"— namely: copying verbatim chunks of ComScore's September 24, 2019, SEC settlement.  Compl. ¶¶ 15-33.  This "Background" is irrelevant, given that: (1) it occurred three years prior to the Class Period, *see id.* at ¶ 17; (2) it is unrelated to the Alleged Misstatements, *see id.* at ¶¶ 17-33; and (3) ComScore settled with the SEC—and a prior

> As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Comscore, their control over, and/or receipt and/or modification of Comscore's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Comscore, participated in the fraudulent scheme alleged herein.

*Id.* For the reasons below, this conclusory paragraph is insufficient to allege facts showing a strong inference of scienter.

### A.    The Complaint Alleges No Motive and Opportunity to Commit Fraud.

Pleading motive and opportunity to commit fraud requires factual allegations that defendants "benefited in some concrete and personal way from the purported fraud." *ECA*, 553 F.3d at 198. "Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry." *Id.*; *see George Lehmann & Insured Benefit Plans, Inc. v. Ohr Pharmaceutical Inc.*, No. 18 Civ. 1284, 2019 WL 4572765, at *6 (S.D.N.Y. Sept. 20, 2019). Proceeding on a motive and opportunity theory frequently requires allegations that insiders made "a misrepresentation in order to sell their own shares at a profit." *ECA*, 553 F.3d at 198; *accord Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 36 (S.D.N.Y. 2019). Even then, courts refuse to presume wrongdoing; rather, the plaintiff must establish that the trading was "unusual." *Wyche v. Advanced Drainage Sys., Inc.*, No. 15 Civ. 5955, 2017 WL 971805, at *12 (S.D.N.Y. Mar. 10, 2017) (Failla, J.) (citations omitted).

---

shareholder class—over said conduct, *see Fresno Cty. Employees' Ret. Ass'n v. ComScore*, Stipulation and Agreement of Settlement, 16 Civ. 01820, Dkt. 250-1 (S.D.N.Y. 2018).

18

The Complaint does not plead that *anyone* benefited from Comscore's Alleged Misstatements in *any way*—let alone through insider selling. The Complaint is devoid of any "motive" and cannot establish scienter based on this theory. *See, e.g.*, *Oklahoma Firefighters*, 367 F. Supp. 3d at 36 (stating that no "motive and opportunity" existed where the complaint lacked allegations of insider selling); *Gillis v. QRX Pharma Ltd*., 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016) (holding that the complaint failed to plead "motive and opportunity" because "there is no allegation that any such person, or the Company itself, otherwise stood to benefit from the inflation in [] stock price. . . .").

### B.    The Complaint Does Not Allege Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness.

The Complaint also fails to plead strong circumstantial evidence of "conscious misbehavior or recklessness," defined as:

> A state of mind approximating actual intent, which can be established by conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.

*Pontiac*, 752 F.3d at 184 (citations omitted); *accord Gagnon*, 368 F. Supp. 3d at 773. A showing of conscious misbehavior or recklessness generally requires demonstrating that defendants: "(1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *ECA*, 553 F.3d at 199.

The Complaint does not suggest that Defendants personally benefitted from any alleged fraud. Nor does the Complaint allege any "hallmarks" of deliberately illegal behavior—*e.g.*, "sham transactions" or "undisclosed payments." *In re Marsh & Mclennan Companies, Inc. Sec. Litig*., 501 F. Supp. 2d 452, 477 (S.D.N.Y. 2006). The Complaint pleads no facts even suggesting

19

that Defendants had any knowledge of any contradictory information.   The Complaint's conclusory allegation of knowledge (*see* Compl. ¶ 77), without any supporting facts, is inadequate to allege scienter.  *See, e.g.*, *In re Aceto Corp. Sec. Litig.*, No. 18 Civ. 2425, 2019 WL 3606745, at *4 (E.D.N.Y. Aug. 6, 2019) (dismissing a complaint because it contained "no non-conclusory allegation" that defendants knew information contradicting their statements); *Fogel v. Wal-Mart de Mexico SAB de CV*, No. 13 Civ. 2282, 2017 WL 751155, at *16 (S.D.N.Y. Feb. 27, 2017) (Failla, J.) (dismissing for lack of scienter where the allegations were "conclusory" and "derived solely from [] job title"); *Russo v. Bruce*, 777 F. Supp. 2d 505, 525 (S.D.N.Y. 2011) (rejecting "[a] conclusory allegation that contrary information was well known within a company" for failure to plead "to whom this was made known, what precisely was made known, how it was made known or when it was made known").

The Complaint also, in a single paragraph, alleges that a confidential witness states that "no one at ComScore was in charge of data strategy," purporting to show that "Defendants lacked a reasonable basis for their statements and guidance regarding the Company's long-term goal to establish a cross-platform measurement currency."  Compl. ¶ 46.  But "the confidential witnesses' allegations are too vague, speculative, and conclusory to contribute to an inference of scienter." *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 305 (S.D.N.Y. 2019) (citing *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)).  Nor do these statements even suggest that the cross-platform strategy was not "working" or "on track."

## III.    The Complaint Does Not Plead Loss Causation.

Pleading loss causation requires demonstrating that "the subject of the fraudulent statement or omission was the cause of the actual loss suffered."  *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*, No. 18 Civ. 00299, 2019 WL 4601644, at *20 (S.D.N.Y. Sept. 23, 2019) (citations omitted).  This demands a "sufficiently direct"—*i.e.*, not an

20

"attenuated"—link between "investment loss and the information misstated or concealed." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005); *accord In re Sequans Commc'ns S.A. Sec. Litig.*, No. 17 Civ. 4665, 2019 WL 4805072, at *3 (E.D.N.Y. Sept. 30, 2019). Put differently, the Complaint must plead facts showing that the "misstatement[s] or omission[s] concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell*, 396 F.3d at 174. Two mechanisms exist for pleading loss causation: (1) showing a "materialization of risk" or (2) identifying a "corrective disclosure" that reveals the reality obscured by the alleged fraud. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010); *accord Nguyen v. New Link Genetics Corp.*, No. 16 Civ. 3545, 2019 WL 591556, at *7 (S.D.N.Y. Feb. 13, 2019).

Nothing in the Complaint suggests an attempt to plead "materialization of risk;" the Complaint attempts to plead only "corrective disclosures." *See generally* Compl. ¶ 54 (stating that the May 8, 2019, disclosures constituted "partial corrective disclosures regarding the impact of Defendants' false and misleading statements. . . ."). Consequently, the Complaint must allege that "the available public information regarding the company's financial condition [was] corrected, and . . . the market reacted negatively to the corrective disclosure." *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 233 (2d Cir. 2014); *accord In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 380 (S.D.N.Y. 2018). The alleged corrective disclosures must "reveal some ***then-undisclosed fact*** with regard to the specific misrepresentations," because "a negative characterization of already-public information" cannot suffice. *Omnicom*, 597 F.3d at 511-512 (emphasis added); *accord In re Xunlei Ltd. Sec. Litig.*, No. 18 Civ. 467, 2019 WL 4276607, at *12 (S.D.N.Y. Sept. 10, 2019).

21

The Complaint alleges losses predicated upon Comscore's decline from $23 per share on February 25, 2019, to $1.61 per share on August 12, 2019. Compl. ¶ 76. For three reasons, the alleged corrective disclosures cannot—as a matter of law—causally support the losses during this six month period. *First*, Comscore publicized the allegedly omitted information—*i.e.*, an internal disagreement regarding cost-control strategy—before the alleged corrective disclosures in May 2019, and the alleged corrective disclosures in May 2019 do not even mention the disagreement. On March 31, 2019, Comscore announced the resignations of the Departing Executives and that it would miss analyst revenue projections. Compl. ¶ 48. On April 1, 2019, Comscore explained that the Departing Executives "disagreed with the Company regarding execution of [its] strategy." *Id.* at ¶ 49. Accordingly, the alleged corrective disclosures in May 2019 did not "reveal some then-undisclosed fact." *Omnicom*, 597 F.3d at 512.[4]

*Second*, the decline in Comscore's stock price began (1) before the alleged corrective disclosures in May 2019, and (2) as a result of missing analyst revenue targets. Compl. ¶¶ 48-50. On April 1, 2019, Comscore lost 30% of its value after announcing the Departing Executives' resignations and that it would miss analyst revenue estimates. *Id.* at ¶ 48. The alleged corrective disclosures in May 2019 cannot have caused losses predating them by a month. *See, e.g.*, *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617–18 (S.D.N.Y. 2015) (rejecting a corrective disclosure theory because "losses that may have incurred before [a company's] misconduct was ever disclosed to the public are not recoverable. . . ."). Furthermore, given the overwhelming importance of meeting analyst projections, *see* Wolters Kluwer, Fed. Sec. L. Rep., P 35991515 (1998), it is not plausible that the alleged corrective disclosures—as opposed to the

---

[4] The Complaint cannot avoid this reality by framing the alleged corrective disclosures in May 2019 as "regarding the *impact* of Defendants' false and misleading statements." Compl. ¶ 54. Every public filing that appears after the disclosure of a significant corporate event will shed light on the *impact* of that event; this stretches the concept of loss causation beyond its breaking point.

failure to meet analyst projections—caused the 30% stock drop, *see generally Fink*, 714 F.3d at 741 (stating that "the existence of alternative explanations [can be] so obvious that they render plaintiff's inferences unreasonable").

*Third*, the Complaint cannot link the alleged corrective disclosures in May 2019 to losses that occurred in August 2019.  Successfully pleading corrective disclosures ordinarily necessitates showing that the "stock fell ***immediately*** following the disclosure. . . ."  *Wilbush v. Ambac Fin. Grp., Inc.*, 271 F. Supp. 3d 473, 484 (S.D.N.Y. 2017) (emphasis added); *see also In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 364 (S.D.N.Y. 2003) ("The Second Circuit has also continued to stress the need to examine whether intervening causes are present and the lapse of time between the fraudulent statement and the loss.").  The Complaint's attempt to plead slow-motion loss causation fails.  *See, e.g.*, *Susie Ong v. Chipotle Mexican Grill, Inc.*, No. 16 Civ. 141, 2017 WL 933108, at *19 (S.D.N.Y. Mar. 8, 2017) (Failla, J.) (expressing "skepticism" that plaintiff pleaded loss causation based on "a series of drops" in stock value); *60223 Trust v. Goldman Sachs & Co.*, 540 F. Supp. 2d 449, 461 (S.D.N.Y. 2007) (dismissing for lack of causation where "loss in value of the stock occurred gradually over the course of the entire class period").[5]

## IV.   The Complaint Fails to Plead Control-Person Liability.

A primary violation of the securities laws is a required element of control-person liability under Section 20(a).  *See, e.g.*, *Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 400 (2d Cir. 2016) ("To state a claim of control person liability under Section 20(a), a plaintiff must show, *inter alia*, a primary violation by the controlled person.").  Because the Complaint does not

---

[5] If Plaintiff argues that the March and April disclosures were also corrective—despite the Complaint identifying ***only*** the May statements as "constitut[ing] partial corrective disclosures," *see* Compl. ¶¶ 73-75—then it would stretch the time elapsed between alleged cause and effect even farther, *see, e.g.*, *Oklahoma Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 504 (S.D.N.Y. 2013) (holding no loss causation existed where "the market had long absorbed" the negative information before the stock price dropped).

plead a primary Section 10(b) violation, its Section 20(a) claim also fails. *See Pacific Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 160 (2d Cir. 2010); *see, e.g.*, *Zagami v. Cellceutix Corp.*, No. 15 Civ. 7194, 2016 WL 3199531, at \*16 (S.D.N.Y. June 8, 2016) (Failla, J.) (dismissing a Section 20(a) claim where the complaint inadequately pleaded a primary violation).

## CONCLUSION

For these reasons, the Court should dismiss the Complaint in its entirety, with prejudice.

Dated:  November 25, 2019

Respectfully submitted,

VINSON & ELKINS LLP

*/s/ Clifford Thau*
Clifford Thau
Marisa Antos-Fallon
David Hoffman
666 Fifth Avenue, 26th Floor
New York, New York 10103
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
Email: cthau@velaw.com
Email: mantosfallon@velaw.com
Email: dhoffman@velaw.com

*Attorneys for Comscore, Inc., Bryan Wiener, and Gregory A. Fink*

24