**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SERGII BRATUSOV, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>COMSCORE, INC., BRYAN WIENER, and GREGORY A. FINK,<br><br>     Defendants. | Case No. 1:19-cv-03210-KPF |

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

VINSON & ELKINS LLP
Clifford Thau
Marisa Antos-Fallon
David Hoffman
666 Fifth Avenue, 26th Floor
New York, New York 10103
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
Email: cthau@velaw.com
Email: mantosfallon@velaw.com
Email: dhoffman@velaw.com

*Attorneys for Comscore, Inc., Bryan Wiener, and Gregory A. Fink*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................................................1

ARGUMENT.....................................................................................................................................2

    I.     The Complaint Pleads No Material Misstatements or Omissions. ...................................2

         A.    Comscore Had No Obligation to Disclose an Internal Disagreement. ....................2

         B.    The Alleged Misstatements Are Not False or Misleading.......................................3

    II.    The Alleged Misstatements Are Not Actionable. ...............................................................5

         A.    The Alleged Misstatements are Puffery or Statements of Opinion. ........................5

         B.    The PSLRA Safe Harbor Applies. ..........................................................................6

    III.    The Complaint Fails to Plead a Strong Inference of Scienter..........................................7

    IV.    The Complaint Does Not Plead Loss Causation................................................................9

    V.    Plaintiff Should Not be Granted Leave to Amend..........................................................10

CONCLUSION................................................................................................................................10

## TABLE OF AUTHORITIES

**Page**

**Cases**

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012) ............................................................. 6

*Cutler v. Kirchner*,
696 F. App'x 809 (9th Cir. 2017) ................................................................... 6

*Friedman v. Endo Int'l PLC*,
No. 16 Civ. 3912, 2018 WL 446189 (S.D.N.Y. Jan. 16, 2018) ..................... 3

*Gagnon v. Alkermes PLC*,
368 F. Supp. 3d 750 (S.D.N.Y. 2019) ............................................................ 8

*Hammerstone NV, Inc. v. Hoffman*,
No. 09 Civ. 2685, 2010 WL 882887 (S.D.N.Y. Mar. 10, 2010) ................... 3

*In re Supercom Inc. Sec. Litig.*,
No. 15 Civ. 9650, 2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018) ................... 7

*In re Time Warner Inc. Sec. Litig.*,
9 F.3d 259 (2d Cir. 1993) ............................................................................... 2

*In re Vivendi Universal, S.A.*,
No. 02 Civ. 5571, 2004 WL 876050 (S.D.N.Y. Apr. 22, 2004) .................... 6

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016) ...................................................................... 9, 10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015) ......................................................................... 10

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) .......................................................................... 3

*Manavazian v. Atec Grp., Inc.*,
160 F. Supp. 2d 468 (E.D.N.Y. 2001) ............................................................ 6

*Micholle v. Ophthotech Corp.*,
No. 17 Civ. 1758, 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ............... 10

*Oklahoma Law Enf't Ret. Sys. v. Telefonaktiebolaget LM Ericsson*,
No. 18 Civ. 3021, 2020 WL 127546 (S.D.N.Y. Jan. 10, 2020) ..................... 8

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
153 F. Supp. 3d 628 (S.D.N.Y. 2015) ............................................................ 3

*Plumbers & Steamfitters Local 137 Pension Fund v. Am. Express Co.*,
No. 15 Civ. 5999, 2017 WL 4403314 (S.D.N.Y. Sept. 30, 2017) ................. 3

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*,
75 F.3d 801 (2d Cir. 1996) ......................................................................... 2, 3

*Schiro v. Cemex, S.A.B. De C.V.,*
  396 F. Supp. 3d 283 (2019) ............................................................................................... 9

*Sjunde AP-Fonden v. Gen. Elec. Co.,*
  No. 17 Civ. 8457, 2019 WL 4094559 (S.D.N.Y. Aug. 29, 2019) .............................................. 9

*Slayton v. Am. Exp. Co.,*
  604 F.3d 758 (2d Cir. 2010) ............................................................................................... 7

*Stratte-McClure v. Morgan Stanley,*
  776 F.3d 94 (2d Cir. 2015) ................................................................................................ 3

*Tongue v. Sanofi,*
  816 F.3d 199 (2d Cir. 2016) ............................................................................................... 6

*Zagami v. Cellceutix Corp.,*
  No. 15 Civ. 7194, 2016 WL 3199531 (S.D.N.Y. June 8, 2016) .............................................. 10

iii

Defendants Comscore Inc., Bryan Wiener, and Gregory Fink submit this memorandum of law in further support of their motion to dismiss the Amended Complaint (the "Motion").[1]

## PRELIMINARY STATEMENT

As Defendants demonstrated in the Moving Brief, Plaintiff's unsupported theory that Comscore was required to disclose an internal disagreement regarding cost-control measures does not state a claim under the federal securities laws.  Among other fatal deficiencies, Plaintiff's Complaint does not identify any false or misleading statement by any Defendant, and does not allege a single fact giving rise to an inference that any Defendant acted with scienter.  Nothing in Plaintiff's Opposition to the Motion (the "Opposition" or "Opp. at __") cures any of these deficiencies and therefore the Complaint should be dismissed with prejudice.

In the Opposition, Plaintiff points to inapposite pre-PSLRA case law in an attempt to argue that issuers are required to disclose internal business disagreements, but cannot distinguish the more current, controlling case law to the contrary cited in the Moving Brief.  More broadly, Plaintiff cannot explain why failure to disclose a disagreement regarding cost-control measures would render any of the Alleged Misstatements false or misleading.  Plaintiff contends that the cost-control measures being considered by the Board were somehow "diametrically opposed" to Comscore's cross-platform measurement strategy or delivery of improved revenue growth, but these allegations are not based on facts, are not plausible, and are contradicted by Plaintiff's own Complaint.  Ultimately, Plaintiff alleges nothing more than that the Departing Executives and the Board disagreed as to how to best execute the strategy described in the Alleged Misstatements. This alleged disagreement does not render the statements false or misleading.

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in Defendants' Memorandum of Law in Support of the Motion (the "Moving Brief" or "Mov. Br. at __.")

Plaintiff's attempts to shore up the Complaint's conclusory scienter allegations by relying on the "core operations doctrine," vague confidential witness statements, and certain employee departures also fail. Controlling case law severely limits the circumstances under which any of these allegations can contribute to, let alone establish, a strong inference of scienter. None of those circumstances applies here. Rather where, as here, Plaintiff does not allege a single fact supporting an inference that the Defendants knew (or should have known) contradictory information when they made the Alleged Misstatements, the Complaint should be dismissed for failing to meet the PSLRA's stringent pleading requirements.

## ARGUMENT

### I.    The Complaint Pleads No Material Misstatements or Omissions.

In the Moving Brief, Defendants demonstrated that the Complaint does not allege any material misstatement or omission because (1) internal corporate disagreements need not be disclosed, and (2) the alleged existence of an internal disagreement regarding cost-control measures does not render any of the Alleged Misstatements false or misleading. Mov. Br. at 8-11. Plaintiff's attempts to argue otherwise in the Opposition fail.

#### A.    *Comscore Had No Obligation to Disclose an Internal Disagreement.*

Controlling Second Circuit authority is clear that issuers have no obligation to disclose internal business deliberations. Mov. Br. at 8-9 (citing cases). In the Opposition, Plaintiff tries to escape this authority by relying heavily on *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259 (2d Cir. 1993), a pre-PSLRA case that is easily distinguishable and whose import has been significantly cabined. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 809-10 (2d Cir. 1996). As clarified by the Second Circuit in *Philip Morris* (which held that an issuer had ***no duty*** to disclose consideration of an alternative marketing plan before adopting it), *Time Warner* requires the disclosure of an alternate business plan only in the following

2

narrow circumstances:  (1) the issuer "induc[ed] investors to believe that alternative[] [business plans] were excluded" from consideration; and (2) the issuer promised to maintain its business plan in the future, but nevertheless changed direction.  75 F.3d at 810-811; *see Friedman v. Endo Int'l PLC*, No. 16 Civ. 3912, 2018 WL 446189, at *6 (S.D.N.Y. Jan. 16, 2018).  The Complaint does not allege facts showing either circumstance; to the contrary, as demonstrated by the Complaint itself, Comscore was focused on cost-controls alongside growth.  *See, e.g*., Compl. ¶ 35 ("[W]e continued to expand our customer relationships, drive revenue growth, and improve our *cost structure* while investing in product development. . . .") (emphasis added).[2]

Following *Philip Morris*, the overwhelming weight of authority has applied the *Philip Morris* standard to hold that companies have no duty to disclose internal deliberations.  *See Friedman*, 2018 WL 446189, at *6; *Plumbers & Steamfitters Local 137 Pension Fund v. Am. Express Co*., No. 15 Civ. 5999, 2017 WL 4403314, at *16 (S.D.N.Y. Sept. 30, 2017); *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd*., 153 F. Supp. 3d 628, 650 (S.D.N.Y. 2015); *Hammerstone NV, Inc. v. Hoffman*, No. 09 Civ. 2685, 2010 WL 882887, at *5 (S.D.N.Y. Mar. 10, 2010).[3]

### B.    *The Alleged Misstatements Are Not False or Misleading.*

To survive dismissal, Plaintiff must allege with particularity *why* Comscore's alleged failure to disclose an internal business disagreement rendered the Alleged Misstatements false or

---

[2] Plaintiff also contends that certain of Defendants' cited cases are distinguishable because plaintiffs in those cases argued that Regulation S-K created a duty to disclose internal business deliberations.  Opp. at 12 n. 6.  That plaintiffs in those cases advanced different arguments to support an alleged duty to disclose under Section 10(b) does not diminish the relevance of these rulings, which were not limited to examination of Regulation S-K.  For example, *Stratte-McClure* affirms "this Court's reluctance to interpret the *securities laws* in a manner that requires companies to give competitors notice of proprietary strategies and information," *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 105 (2d Cir. 2015) (citations omitted) (emphasis added), and cites *Philip Morris*, a case that did not involve an alleged a duty to disclose based on Regulation S-K.

[3] The Opposition also relies heavily on *Lormand v. US Unwired, Inc*., 565 F.3d 228 (5th Cir. 2009), which is non-binding, and in any event does not stand for the proposition that issuers must disclose internal corporate disagreements. That case involved non-disclosure of an *external* business risk—*i.e.*, subprime customers' inability to pay.  *Id.* at 249.

misleading.  *See* Mov. Br. at 9-11 (citing cases).  The Complaint's conclusory allegations fail to meet this standard.  *Id.*  Nothing in the Opposition saves Plaintiff's deficient pleading.

Plaintiff's theory expressed in the Opposition appears to be that the cost-control measures advocated by the Board represented a strategy that was allegedly "diametrically opposed" to or "undermined" public statements that Comscore's "strategy of becoming a trusted currency for planning, transacting and evaluating media cross-platforms" was "working" and the Company was "on the right track towards building a business that can deliver improved revenue growth with expanding margins over time."  Opp. at 10-13.[4]  The Complaint does not allege any facts supporting this theory, which is both implausible and contradicted by Plaintiff's own allegations.

First, the allegations in the Complaint and the public filings cited therein demonstrate that Comscore maintained its strategy of establishing a cross-platform measurement currency throughout the class period, regardless of any consideration or implementation of cost-control measures.  *See, e.g.*, Compl. ¶ 45 ("Cross-platform and digital measurement remain part of ComScore's long-term strategy. . . ."); *id.* at ¶ 44 ("We do not expect these [officer] changes to impact . . . our strategy to be the trusted currency for planning, transacting, and evaluating media across platforms. . . .").  As the Complaint acknowledges, cross-platform measurement was and remains Comscore's business.  Opp. at 1 ("Comscore . . . creates products by combining information about content and advertising consumption on digital platforms, televisions, and movie screens with demographics and other descriptive information. . . .").[5]

---

[4] The Opposition states Comscore represented that it "was focused on 'driv[ing] revenue growth,'" Opp. at 10, but no such public statement appears in the Complaint.  As quoted on pages 3 and 5 herein, Comscore's February 28, 2019 press release stated: "[i]n the fourth quarter, we continued to . . . drive revenue growth . . ." *See* Compl. ¶ 35.

[5] Unable to refute the admissions in his own Complaint that Comscore's cross-platform measurement strategy remained in place, Plaintiff cites a statement from a former employee saying, with respect to cross-platform measurement ,"we never got it done."  Opp. at 11 n. 5.  This argument illogically conflates a strategy "remaining in place" with its "success," and does not render any of the Alleged Misstatements false or misleading.

4

Similarly, Plaintiff does not—because he cannot—provide any support for the contention that the allegedly contemplated cost-control measures were "diametrically opposed" to Comscore's being "on the right track toward building a business that can deliver improved revenue growth with expanding margins over time." *Id.* No facts are pleaded to show that an effort to control costs conflicts with improving revenue growth and expanding margins over time. The Comscore disclosures cited in the Complaint itself confirm that the two efforts are *not* conflicting. *See, e.g.*, Compl. ¶ 35 ("In the fourth quarter, we continued to expand our customer relationships, ***drive revenue growth***, and ***improve our cost structure*** while investing in product development, resulting in our fourth straight quarter of positive adjusted EBITDA.") (emphasis added).

Ultimately, it is evident from the Complaint itself that there was no "diametrically opposed" strategy advanced by the Board that "undermined" a cross-platform measurement strategy or the delivery of improved revenue growth. Rather, the Complaint alleges nothing more than that the Departing Executives and the Board had different approaches to achieve these goals. *See* Mov. Br. at 5; *see generally* Comscore, Current Report, 4 (Form 8-K) (April 1, 2019) ("[A]lthough the Board and Mr. Wiener are ***generally aligned*** on the Company's strategy, Mr. Wiener disagreed with the Company regarding the execution of the strategy.") (emphasis added).

## II.     The Alleged Misstatements Are Not Actionable.

### A.     *The Alleged Misstatements are Puffery or Statements of Opinion.*

In the Moving Brief, Defendants demonstrated that First Alleged Misstatement (about "leveraging a stronger foundation to execute into 2019 and beyond") and the Second Alleged Misstatement (that Comscore was "on the right track towards building a business that can deliver improved revenue growth with expanding margins over time") were non-actionable puffery because they are "vague aspirational statements" that are not material under the securities laws. Mov. Br. at 11-14. Rather than distinguish the numerous analogous cases cited in the Moving

5

Brief, Plaintiff responds with inapposite case law.  Opp. at 12-13.  For example, in *Manavazian v. Atec Grp., Inc.*, 160 F. Supp. 2d 468, 473-74, 480 (E.D.N.Y. 2001) and *In re Vivendi Universal, S.A.*, No. 02 Civ. 5571, 2004 WL 876050, at *7 (S.D.N.Y. Apr. 22, 2004), the courts held that statements about being "on track" to achieve an earnings target or earnings model were not puffery when the issuer was aware of a "paradigm shift" that "hobbl[ed] the Company's basic health" or a "massive and crippling liquidity crisis" at the company.  Statements that a company is "on track" to achieve projected earnings are far more specific than the statement here that Comscore is "on the right track towards building a business that can deliver improved revenue growth with expanding margins over time."  Moreover, the internal corporate disagreement alleged in the Complaint is not at all comparable to the "paradigm shift" or "crisis" in Plaintiff's cited cases.[6]

As explained in the Moving Brief, the Second Alleged Misstatement is non-actionable for the additional reason that it is an opinion.  Mov. Br. at 13.  Plaintiff disputes this point, but his only cited case stands for the unremarkable proposition that a statement of opinion is actionable if the speaker: (1) does not believe the statement; (2) supplies untrue facts to support the opinion; or (3) "makes the statement misleading to a reasonable investor" by omitting facts.  *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (citations omitted).  For the reasons discussed in Section I.B. and in the Moving Brief, none of these circumstances applies here.  *See* Mov. Br. at 9-11.

### B.    *The PSLRA Safe Harbor Applies.*

The Opposition also advances various arguments that the PSLRA's safe harbor does not apply to the Alleged Misstatements.  None of these arguments can save the Complaint from

---

[6] The holdings in *Cutler v. Kirchner*, 696 F. App'x 809, 814 (9th Cir. 2017) (summary order) and *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 366 (S.D.N.Y. 2012) are similarly inapposite. The rulings in those cases that statements about a product "working," or a "win rate driving [] performance" did not constitute puffery were predicated on the context of other, highly specific accompanying statements or projections by Defendants.  No similar context is present here.

6

dismissal.    First, Plaintiff argues that the Alleged Misstatements are not forward-looking. Although Plaintiff identifies certain present tense phrases in the Alleged Misstatements, such phrases served only to indicate that future projections were attainable (*i.e.*, "we are on the right track towards . . . deliver[ing] improved revenue growth. . . ."). Accordingly, the use of the present tense does not change the forward-looking character of the Alleged Misstatements. *See In re Supercom Inc. Sec. Litig.*, No. 15 Civ. 9650, 2018 WL 4926442, at \*21 (S.D.N.Y. Oct. 10, 2018).[7]

Second, with respect to Comscore's cautionary language, Plaintiff contends, without support, that such language should have disclosed the internal disagreement regarding cost-control measures. Opp. at 17-18. But Plaintiff does not dispute that Comscore disclosed the very risks the Complaint alleges materialized (*i.e.*, risks associated with its future growth and revenues, and the success of its corporate strategies), rendering the Alleged Misstatements immaterial as a matter of law. *See Slayton v. Am. Exp. Co.*, 604 F.3d 758, 772 (2d Cir. 2010); Mov. Br. at 14-16.

Finally, Plaintiff argues that Defendants knew Comscore's statements lacked a reasonable basis because of the alleged internal disagreement. Opp. at 15-16. For the reasons discussed *supra* at Section I.B., Plaintiff does not allege any reason why this alleged disagreement would render the Alleged Misstatements false or misleading, let alone facts demonstrating that any Defendant had "actual knowledge" of falsity, as required in order to lift the PSLRA safe harbor. *Slayton,* 604 F.3d at 766;  Mov. Br. at 16-17; *infra* at Section III.

**III.    The Complaint Fails to Plead a Strong Inference of Scienter.**

In the Moving Brief, Defendants demonstrated that the Complaint should be dismissed because it does not allege facts giving rise to a strong inference of scienter. Mov. Br. at 17, 23. Rather, the Complaint makes only the quintessential conclusory allegation that "Defendants knew

---

[7] Plaintiff cannot escape the consequences of the PSLRA's safe harbor by arguing that it does not apply to omissions. Plaintiff has predicated his Complaint upon alleged "false and misleading statements." *See* Compl. ¶¶ 43, 54.

7

that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading," (Compl. ¶ 77) which does not come close to meeting the PSLRA's stringent requirements. Mov. Br. at 17-20.

Plaintiff attempts to argue that he has adequately pleaded scienter based on the "core operations doctrine," but "[t]here is considerable doubt whether the core operations doctrine survived enactment of the PSLRA, and many courts have held that it is no longer valid." *Oklahoma Law Enf't Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, No. 18 Civ. 3021, 2020 WL 127546, at *7 (S.D.N.Y. Jan. 10, 2020). In any event, courts in this District uniformly hold that "core operations" allegations alone are insufficient to allege a strong inference of scienter. *See Gagnon v. Alkermes PLC*, 368 F. Supp. 3d 750, 775 (S.D.N.Y. 2019). Here, the Complaint pleads no facts even suggesting that Defendants had any knowledge of information contradicting the Alleged Misstatements, let alone independent allegations of scienter. *See* Mov. Br. at 17-19.

Grasping at straws, Plaintiff argues that he has pleaded scienter based on (1) certain confidential witness statements, and (2) the departure of certain employees and one director of Comscore. Opp. at 21-22. As explained in the Moving Brief, the confidential witness's vague statements are woefully insufficient to plead an intent to defraud. Mov. Br. at 20. These allegations do not suggest, let alone plead with particularity, that any Defendant had knowledge of facts contradicting the Alleged Misstatements. *Id.*

With respect to Plaintiff's argument regarding employee and director departures, Courts routinely reject the argument that the departure of executives creates an inference of scienter—unless the resignations are "***highly*** unusual and suspicious," and "independent evidence corroborat[es] that the employee who resigned held a culpable state of mind." *Schiro v. Cemex, S.A.B. De C.V.*, 396 F. Supp. 3d 283, 303 (S.D.N.Y. 2019); *see Sjunde AP-Fonden v. Gen. Elec.*

*Co.*, No. 17 Civ. 8457, 2019 WL 4094559, at *12 (S.D.N.Y. Aug. 29, 2019).  The Complaint pleads neither requirement.

**IV.     The Complaint Does Not Plead Loss Causation.**

As demonstrated in the Moving Brief, the Complaint fails to plead loss causation because it attempts to allege that losses through ***August 12, 2019*** were caused by the failure to disclose information that was revealed by April 1, 2019.  Mov. Br. at 20-23.  In the Opposition, Plaintiff relies on inapposite case law concerning "constructive disclosures" or information "leaking out," but has not alleged facts to fit either theory.  In contrast, Plaintiff's theory pleaded in the Complaint is that Alleged Misstatements were false or misleading because Comscore failed to disclose a disagreement regarding cost-control measures.  That alleged disagreement was made public on March 31 and April 1, 2019, when Comscore announced the departure of the Departing Executives and Mr. Weiner attributed his resignation to a disagreement regarding execution of Company strategy.  *See* Compl.  ¶¶ 48 - 49.  It was publicly reported by April 2, 2019 that the disagreement related to cost-control measures advocated by the Board.  *Id.*  ¶¶ 44.

Plaintiff's arguments that the reduction in force announced on May 8, 2019 or Comscore's first and second quarter financial results were "partial corrective disclosures" or instances in which the truth "leak[ed]" out cannot save his loss causation allegations.  Plaintiff's cited case law does not support reliance on these theories after the issuer disclosed the allegedly concealed information.  *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 262-63 (2d Cir. 2016).  In *Vivendi*, the plaintiffs alleged that defendant had "concealed its liquidity risk," but made constructive disclosures over eight months, each of which provided a ***new*** piece of relevant information that caused its stock to fall.  *Id.* at 262.  Here, the market learned of the ***precise*** information Plaintiff

9

claims was concealed no later than April 2, 2019.  Compl. ¶ 48.  Accordingly, Plaintiff cannot rely on theories of  "constructive disclosure" or "leaking" of that already-public information.[8]

## V.    Plaintiff Should Not be Granted Leave to Amend.

Plaintiff, having had an opportunity to amend his Complaint, and failed for various reasons to plead a violation of the securities laws, should not be granted leave to amend.  In addition, Plaintiff had notice of Defendants' arguments in their pre-motion letter and did not seek leave to amend at that time.  Leave to amend is especially inappropriate here because Plaintiff has failed to identify how he will remedy the deficiencies in the Complaint.  *See Zagami v. Cellceutix Corp.*, No. 15 Civ. 7194, 2016 WL 3199531, at *16 (S.D.N.Y. June 8, 2016) (Failla, J.) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).

## CONCLUSION

For the foregoing reasons and those set forth in the Moving Brief, the Court should dismiss the Complaint in its entirety, with prejudice.

Dated:  January 27, 2020

Respectfully submitted,

VINSON & ELKINS LLP

*/s/ Clifford Thau*
Clifford Thau
Marisa Antos-Fallon
David Hoffman
666 Fifth Avenue, 26th Floor
New York, New York 10103
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
Email: cthau@velaw.com
Email: mantosfallon@velaw.com
Email: dhoffman@velaw.com

---

[8] Plaintiff's claim to losses that occurred before the alleged corrective disclosure (Opp. at 25) fails as a matter of law and logic.  *See Micholle v. Ophthotech Corp.*, No. 17 Civ. 1758, 2018 WL 1307285, at *5 (S.D.N.Y. Mar. 13, 2018).